WILSON, Appellant, vs. DEMOS and another, Respondents.

*October 14—November 11, 1924.*

*Landlord and tenant: Duty to protect building against excavation on adjoining property: Covenant of tenant to repair: Breach: Forfeiture: Waiver.*

1. Where a tenant who had covenanted to keep leased premises in repair refused to underpin one of the walls of the building, made necessary because of an adjoining excavation, and the landlord had such underpinning built, the landlord could either seek payment of the cost of the work or declare a forfeiture of the lease, and by bringing action for the cost of the underpinning the right to declare a forfeiture was waived. p. 46.

2. A failure to repair constitutes a continuing breach; *i. e.* every day during the period of the lease in which the tenant fails, refuses, or neglects to repair constitutes an additional breach for which the landlord may declare a forfeiture; but where the landlord proceeds to make such repair a breach on that account is extinguished. p. 46.

[3. The question as to what duty devolves upon a tenant who has agreed to make repairs, in regard to protecting the leased premises against excavation on adjoining property, not decided.] p. 48.

APPEAL from a judgment of the circuit court for Kenosha county: G. N. RISJORD, Judge. *Affirmed.*

The appeal is from a judgment dismissing plaintiff's complaint with costs.

The cause was submitted for the appellant on the brief of *Stewart & Vaudreuil* of Kenosha, and for the respondents on that of *Alfred L. Drury* and *Robert V. Baker,* both of Kenosha.

DOERFLER, J.    The plaintiff, being the owner of a certain brick store building on the east side of Main street in the city of Kenosha, on the 21st day of June, 1919, entered into a written lease with the defendants as lessees, under which she leased to the defendants said premises for a period of fifteen years from the 1st day of February, 1922. This lease, among other provisions, contained the following:

"It is expressly agreed that the lessor shall not be obligated to make any repairs whatever upon the premises hereby leased during the existence of this lease, and that the lessees, free of charge to the lessor, in addition to the aforesaid rental, and free of costs or expense to the lessor, shall keep the building hereby leased, both inside and outside, including the roof, in tenantable repair and condition, and shall turn over and deliver the same to the lessor at the end of said term in as good repair as the same is in at the commencement of said term, reasonable use and wearing thereof and damage by accidental fire or other accidents not happening through the neglect of the lessees, or either of them, their agents, servants or employees, only excepted."

The lease also contained a provision that, upon the failure of the lessees to perform any of the terms and conditions of the lease, the lessor might re-enter and take possession of the leased property. The lease also contained the following provision:

"The said lessees agree and bind themselves to quit and deliver up possession of said premises, peaceably and quietly, to the said lessor, or her legal representatives, at the expiration of the term above stated, and shall take special care and use all proper means to preserve said premises from injury by fire or otherwise. . . ."

During the latter part of the year 1922 and the early part of 1923 a certain hotel building adjoining the leased premises on the south was torn down so as to enable the owner of such premises to erect a new building upon the site. The plan of the proposed hotel building included an excavation below the depth of the old building and a depth of from five to ten feet lower than the basement walls of the plaintiff's building. Such an excavation on the site of the hotel building endangered the walls and building situated upon plaintiff's property, and therefore the owner of the hotel building gave due notice to the plaintiff to protect her property and her building so as to avoid a cave-in. Plaintiff thereupon conferred with the defendants and requested them to protect the leased premises, which the defendants refused to do. Thereafter the plaintiff entered into a contract with one Jensen, who had the contract for the erection of the hotel building, to underpin the south wall of her building with stone and concrete and thus protect it from damage and injury, for which underpinning plaintiff agreed to pay the contractor the sum of $1,800. The underpinning was completed about the 1st day of June, 1923. The defendants herein continued to pay the monthly rental under the lease from the time of the completion of such underpinning up to the 1st day of January, 1924.

On the 2d day of November, 1923, plaintiff served a no-

tice upon the defendants, in which, among other things, she demanded payment of the $1,800, the cost of the under-pinning, and also notified the defendants generally that they had failed to comply with the terms and conditions of said lease by failing to keep said building in tenantable condition; that unless the defendants complied with the terms of the lease she would declare the lease forfeited. On the 2d day of January, 1924, plaintiff served notice of election to ter-minate said lease for an alleged failure on the part of the defendants to comply with the terms, conditions, and cov-enants of the lease, and in and by such notice the lease was declared forfeited; and on the same day a three-day notice was served, demanding that the defendants surrender up possession of said premises to the plaintiff. Thereupon the present action of unlawful detainer was begun.

By their answer the defendants denied that they failed to comply with the terms of said lease; also denied that the underpinning constituted a repair for which they were liable under the terms of the lease, it being alleged in the answer that the work of underpinning constituted a substantial im-provement or addition to the building, not contemplated by the parties at the time the lease was executed, and that the plaintiff by receiving rent after the completion of the under-pinning up to the 1st day of January, 1924, waived the for-feiture; that the contractor, Jensen, in the fall of 1923 com-menced an action against the plaintiff herein to recover the sum of $1,800, the cost of the underpinning, and that the defendants herein were interpleaded as parties defendant so that the plaintiff could recover from the defendants the amount of the damages.

If we assume that the defendants, by failing to erect the wall under the old wall of plaintiff's building, or by failing to reimburse the plaintiff for the cost of the underpinning, were guilty of a breach of a covenant of the lease requiring the defendants to maintain the leased premises in a tenant-able condition, then the question arises whether the for-

feiture ensuing has been waived by the plaintiff.   It is true, as the learned trial judge stated in his opinion, that the underpinning became necessary by reason of the additional excavation, and that in order to protect her building the plaintiff was obliged to enter into the contract with Jensen whereby she incurred a liability in the sum of $1,800.  After the completion of the underpinning she had one of two inconsistent remedies: she could either insist upon the payment of the cost of the underpinning, or could declare a forfeiture and thereby regain possession of the demised property. She therefore elected one of the two remedies available to her, and, having done so, waived the forfeiture.

In 1 Underhill, Landl. & T. p. 662, it is said:

"A landlord cannot enforce a forfeiture and at the same time make the repairs and recover their value from the tenant.  If he, when premises are permitted by the tenant to remain out of repair, shall enter therein and make the repairs and then sue the tenant for the costs of the repairs, he waives a forfeiture created by the lease on the failure of the tenant to keep in good repair."

To this proposition is cited *Doe ex dem. De Rutzen v. Lewis,* 5 Adol. & E. 277, 289, 6 Nev. & M. 764.  See, also, *Gomber v. Hackett,* 6 Wis. 323; *Palmer v. City L. Co.* 98 Wis. 33, 73 N. W. 559.

A failure to repair, unlike a failure to pay rent, constitutes what is known in the law as a continuing breach.   In other words, every day during the period of the lease in which the tenant fails, refuses, or neglects to repair constitutes a new, additional, and continuing breach for which the landlord may declare a forfeiture.   However, in the instant case, upon the completion of the contract for underpinning, no breach thereafter existed on that account.   There existed only, if anything, a claim on the part of the plaintiff against the defendants for the cost of such underpinning.   The premises were no longer in danger on account of the alleged lack of repair, and the reason for the rule which constitutes

a failure to repair a continuing breach no longer existed. The dispute resolved itself into an actual claim for money damages arising out of plaintiff's contract with the contractor.

Assuming that the plaintiff had the right to declare a forfeiture on account of the failure of the defendants to reimburse her, she could not both declare a forfeiture and recover the amount of the cost of the underpinning. Any unequivocal act on her part to elect either one or the other of the remedies became final with her, and she became bound thereby. The danger from the excavation had been averted by plaintiff's own act, and, as above stated, the reason for holding a want of repair as a continuing breach had been eliminated. Consequently the plaintiff was in the same position with respect to her claim for the cost of the underpinning as she would have been with respect to any other breach not known in the law as a continuing breach. Exact situations such as are made manifest in the instant case are rarely to be found in the authorities, and we have therefore been obliged to apply well recognized elementary principles of law.

Plaintiff further contended that the defendants had violated the covenants of the lease, and that the lease thereupon became forfeited, because there appeared in the front of the building a crack in the wall extending from the top half way down the building. The court also found that there was a dispute in the evidence as to the cause of this crack, it being testified on the one side that such crack resulted from the settling of the building an account of the excavation under the south wall, and on the other that such crack had existed for a long time prior to the excavation. The court found, however, that this alleged crack was not of a serious nature and did not cause the building to become untenantable, and that it could be readily remedied by pointing up, in the course of a few hours.

It was also found that the wall in the rear of the building

had settled, causing it to be removed from the window situated upon such wall in such a way as to leave some space between the window and the wall, which enabled rain and the elements to enter at that point. The evidence shows, and the court found, that prior to the commencement of this action, and prior to the election of the plaintiff to declare the lease forfeited, the defendants, at considerable expense, caused the east wall to be removed and reconstructed so as to eliminate this claim. In brief, the court found that there was no breach of the covenants of the lease by the defendants on account of the conditions existing on the east and west walls.

The conclusions we have arrived at make it unnecessary for us in this case to decide what duty the defendants as tenants actually had with respect to protecting the building by reason of the excavation upon the adjoining property. The question thus involved is an extremely important one, affecting the relative rights and duties of landlords and tenants where long-time leases are entered into. Of course, it becomes evident that the conclusion arrived at in each case must depend largely upon the peculiar provisions of the lease and upon the surrounding facts and circumstances existing at the time the lease was executed. The briefs of counsel on both sides are far from being exhaustive of the authorities, and while we have given the matter our own individual attention we have concluded to reserve the determination of such question for the future.

The conclusions arrived at result in an affirmance of the judgment of the lower court.

*By the Court.*—Judgment affirmed.